### JOHN G. MORTON *v.* W. C. LANGLEY.

**Lands and Conveyances—Lien not Reserved in Deed—Suit to collect—Lis Pendens Purchaser.**

John G. Morton purchased of J. R. Cargile a tract of land for a recited consideration of $1,800. Cargile had purchased the land of W. C. Langley for $3,436, payable in three notes, accepting a bond for title therefor, and when the first note became due a payment of some $700 was made, and to enforce the collection of balance of said note a suit in equity by default produced a judgment for the sale of enough of the land to satisfy the amount. Default being made on the second note a like suit was filed. John G. Morton, before his purchase from Cargile, was appointed commissioner by the court to sell the land under the judgment, and at the time of his purchase, told a witness Cox, that he would sell him the land, if he would take such title as he got from Cargile. Langley had made a deed to Cargile reciting "that Cargile has fully complied with the requirements of said bond" and retained no lien therein for the purchase money. This he claims by amended petition to have been a mistake in drafting as none of the purchase money but the $700 was paid. **Held,** that Morton was lis pendens purchaser with

actual notice of the existence of the suit and its objects, having been appointed to carry out the judgment of the court, and by his own voluntary act trying to defeat the judgment he was ordered to execute.

APPEAL FROM HOPKINS CIRCUIT COURT.

May 23, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

On the 29th of May, 1860, appellee sold to one John R. Cargile a tract of about 309 acres of land in Hopkins county for $3,436 in three equal installments, the first due the 1st of January, 1861, the other two due the 1st of January, 1862 and 1863, respectively, and bearing interest from the 1st of January, 1861.

Seven hundred and forty 74-100 dollars were paid and credited on the note due the 1st of January, 1861, fourteen days after its maturity, and for the residue thereof an action was brought in equity on the 10th of April, 1861, to coerce payment by an enforcement of the vendor's lien by a sale of as much of the land as would be necessary for that purpose. Cargile failed to answer, although process was served upon him, and on the 30th of May, 1863, the petition was taken for confessed, and a judgment rendered for the relief sought; but no sale was made, nor does it appear that said judgment has ever been satisfied.

The two notes, for the remaining installments, having matured; in June, 1863, another equitable action was instituted by appellee in the Hopkins circuit court to collect them by an enforcement of his lien, and on the 4th of December, 1863, Cargile, the defendant, filed his answer in the last action, admitting the execution of the notes for part of the purchase money for the land sold to him by Langley, for which he alleges he has the title bond of the latter, binding him to convey said land with covenant of general warranty, which bond he professes to file, but which is not in the transcript before us. He also alleges that a portion of said land, the number of acres he professes to be unable to state, is claimed and held adversely to the claim of his vendor, and that he has not a good and sufficient title to said land, and cannot therefore make him a title. He furthermore states that previous to the institution of the suit for the first installment, he paid to appellee the sum of two hundred and twenty dollars in addition to the amount credited

on the note, for which he promised a credit, but that he had failed to give him the credit, and asks a credit therefor in this case. He finally prays for an exhibition of appellee's title, and if he cannot show a title regularly derived from the Commonwealth, he prays that the contract may be rescinded on equitable terms.

The two actions were consolidated on the 31st of May, 1864, by agreement, and continued until the next term of the court. No other step seems to have been taken in the cause until the 25th of May, 1865, when Cargile filed an amended answer, in which he alleges that he was the sheriff of Hopkins county for the years 1857 and 1858, and in 1857 he appointed appellee his deputy, that he was then qualified, and continued to act in that capacity until the fall of 1858, and while so acting, the tax books for said county were placed in his hands to collect the taxes, and he did collect a large amount of revenue tax, county levies and fee bills, which were also put in his, said deputy's, hands to collect; the whole amount thus collected, he says, he is unable to state; but charges it to be as much as six thousand dollars. He further alleges that about the 15th of March, 1859, they attempted to make a settlement at the house of the appellee, in the absence of the tax books, taking his statement as the basis of said settlement, and he then represented that he had only collected about two thousand dollars, which sum was all he then accounted for; the statement of accounts was made out by Roland Gooch, and left in possession of appellee, consequently he was unable to file them; that at that time he believed the settlement was correctly made, relying implicitly on the representations of appellee in relation thereto; but since then his attention has been called to said tax books, and he has discovered that the representations of appellee were untrue, that instead of two thousand dollars collected by him, he had collected over six thousand dollars, and that he owes to him, said Cargile, four thousand dollars, which sum he pleads as an off-set against the demand of appellee. And on the same day, appellant was substituted as commissioner, to execute the judgment rendered in the former action, in place of Samuel Morton, the commissioner first appointed, he having died.

About the 13th of February, 1864, as may be assumed from the certificate of acknowledgement, appellee executed a deed without date to Cargile his vendee for the land, in which he recites that on the 29th of May, 1860, he executed to Cargile a bond for the

conveyance of a certain tract of land in Hopkins county, which is more particularly described by reference to the deed of his vendor to him, and then recites:

"for which the said Cargile agreed by his three several promissory notes to pay to the said Langley the sum of $3,436, the first note due January, 1861, for $1,146.33 1-3, on the payment of the first note Cargile was to have possession. The second note for the same amount as the first and due the 1st of January, 1862, bearing interest from the 18th of January, 1861. The third note for the same amount as the second, and due the 1st of January, 1863, bearing interest from the 1st of January, 1861.

"Now for and in consideration that the said *Cargile* has fully complied with the requirements of said bond, I have this day granted, bargained and sold, and doth by these presents, grant, bargain, sell and convey unto the said Cargile, his heirs, &c., the land described in said bond," &c; the boundary is then given, and it concludes with a covenant of general warranty. It was acknowledged by the grantor and his wife before the clerk of the Hopkins county court, and recorded in his office.

On the 11th of October, 1865, Cargile conveyed the land to appellant for the *recited* consideration of eighteen hundred dollars,

"the amount paid by the party of the second part to Rowland Gooch, for money paid by said Gooch as security of the party of the first part in his official covenant as sheriff of Hopkins county to the State of Kentucky, being balance of revenue of Hopkins county, owing to the State of Kentucky, by said party of the first part, for which the party of the second part has delivered to the party of the first part an order drawn by said Gooch for same,"

&c., and warranted the title thereto.

After the execution of said deed, at the May term of the court, 1866, appellant filed his petition to be made a defendant to the action, setting up his purchase, and conveyance, and in obedience to an order of the court, he was made a defendant, and his petition taken as his answer—in which he avers he paid the price for the land as recited in the deed; that he made the purchase in good faith, believing that Cargile had a perfect title to the land, acquired by a deed from Langley dated 13th of February, 1864,

duly acknowledged, and admitted to record in the proper office, who is seeking to subject the same to a claim for the purchase money; but that he is advised he has no lien on the land, and no right to subject it to the payment of the debt claimed; that the deed to Cargile was executed long after all the purchase money had become due, and no lien was retained on the land for its pay-ment, and therefore asks that the petition be dismissed so far as it seeks to enforce a lien on the land for the debt therein claimed, and prays for all appropriate relief.

The deed from Langley and wife to Cargile, and from Cargile and wife to Morton, are filed as parts of said petition.

Appellee filed an amendment to his former petitions, in which he alleges that in writing the deed from himself and wife to Car-gile, the words,

> "Now for and in consideration that the said Cargile 'has fully complied with the requirements of said bond,' were inserted and written through mistake, and under a misap-prehension of what words would be necessary and proper, under the statute law of this State, to retain a lien on the land for the purchase money, as the said plaintiff had before the said deed was written proposed in the petitions in the cause to do. Instead of the said words, there should have been written, 'Now, for and in consideration that the said Cargile *shall* fully comply with the requirements of said bond.'

> "The said mistake or error occurred in this way: The plaintiff was ready and willing to make defendant Cargile a deed as proposed in his petitions, and had a conversation with his then only counsel A. K. Bradley, Esqr., as to doing so, in which his said counsel told him that in writing the deed he must state distinctly the amount of purchase money remaining unpaid, and let the deed be made in consideration of defendant Cargile's subsequent compliance with the terms of his contract."

The deed was not written by his attorney, but by a deputy clerk, and that he told him to write the deed in compliance with the bond retaining a lien on the land, but he did not observe the in-accuracy in the language of the deed, nor did his attorney, until just at the time said amendment was tendered; that said deed is not written in conformity to their contract, nor are its recitals true, if

it be construed to mean that the purchase money for the land is paid; it was certainly not his intention in making the deed to acknowledge that the price for the land was paid, or to waive his lien therefor, all of which is and was well known to Cargile, and any effort to give to said deed such effect is fraudulent on his part. That he is insolvent, and if he shall be successful in defeating plaintiff's claim to a lien on the land, the debt will be lost.

That Morton when he accepted said order drawn by Cargile on him in favor of Gooch, well knew the purchase money was not paid for the land, and that appellee was by his action, then pending, endeavoring to coerce payment by the enforcement of his lien, that he has not in fact paid Gooch any money for the land, and that the true agreement between the parties thereto in relation to the payment is that he is only to pay in the event he shall be successful in resisting the asserted lien of appellee, on the final determination of the suit, and that the arrangement is an effort on the part of Cargile fraudulently to prefer Gooch over the rest of his creditors.

Morton in his answer to this amended petition, denies that the words importing that Cargile had complied with his undertakings set forth in the title bond as inserted in the deed from Langley to Cargile, were inserted by mistake, or under a misapprehension of what words were necessary to retain a lien on the land under the statute of the state, and charges that the deed was written by the draftsman as directed by Langley himself, neither he nor Cargile being present, and denies that any instructions were given at the time the deed was written, that it should be writen so as to retain a lien on the land for the unpaid price. He denies any knowledge on the subject of whether the recitals in said deed are true, or false, but insists that even if he knew them to be false, that fact could confer no right on Langley which he failed to reserve and secure to himself in his deed. As to the knowledge of Cargile on the subject of the payment of the purchase money, or the intention of Langley in making the deed, he denies any information, or belief in relation thereto, and professes to know only what the deed shows on its face; alleges that he purchased in *good faith,* relying that the deed manifested a clear title in his vendor, free from all encumbrances, reiterates the statement of the indebtedness of Cargile to Gooch in the sum of $1,800, for which the former drew on him in favor of the latter, and he

executed his bond to Gooch for *$1,350,* to be paid when he could effect a sale of the land, and that no other agreement, or understanding, was ever made in relation thereto; that Cargile is fully discharged from his indebtedness to Gooch, and he is bound to event that he succeeds in defeating Langley in his efforts to subject the land to his debt, or that Gooch was to refund the money in case he lost the land. Denies that in making the conveyance to him Cargile intended to prefer Gooch over the residue of his creditors, or if he had any such purpose, he was ignorant of it. And charges that all statements and allegations in the amended him for said $1,350, and after a reasonable time shall have elapsed for him to sell said land, he will be compelled to pay him the last named sum. That $1,800, taking into consideration the condition of the country was near, or at least closely approximated, the value of said land; denies that he is only to pay Gooch in the petition inconsistent with said answer are untrue, and demands proof of the same.

Cargile in his answer denies, that there was any mistake in writing the deed of Langley to himself, or that the words proposed in the amended petition should have been inserted in the deed, instead of those which were inserted. That he knew nothing of the instructions alleged to have been given by Langley's attorney, to him, as to how the deed should be written, and did not know by whom it was written, until he saw Campbell's deposition in the case; denies that the draftsman was instructed to write the deed so as to retain a lien on the land. That the deed, as he alleges clearly expresses the intention of the grantor therein, and does not conflict with any understanding, or agreement between the parties thereto, and denies all fraud charged against him; denies he is *then* indebted in any sum to said Rowland Gooch, for money paid for him as his surety. Alleges that the sum paid by Morton at the time he purchased, was near the full value of the land, and that he paid him the full amount he agreed to pay for the same by accepting the order drawn in favor of Gooch, and says

> "he denies that there was any agreement between himself, Morton and Gooch on his part to prefer Gooch to the plaintiff in the payment of this defendant's debts at the time he made the sale of the land to Morton, or at any other time."

On final hearing the court below adjudged Cargile was not

entitled to anything on his cross action, and claim to a set-off, against appellee, and in addition to the judgment for the amount unpaid on the first installment, at the May term, 1863, of said court rendered judgment against Cargile for the amount of the second and third installments, that appellee had a lien on the land for the satisfaction of said judgment, and appointed a commissioner to execute the same. And from this judgment Morton alone has appealed, calling in question only that part of the judgment which subjects the land, and not controverting the indebtedness of Cargile to Langley therefor.

The deed from Langley to Cargile recites correctly the amount of each installment of the purchase money, and the respective periods at which they matured; but at the date of the deed, all the installments were past due, the last one having matured more than 12 months before that time, and the fact that they were unpaid was not stated, nor was there any lien reserved on the land in express terms in the deed. So that, looking to the deed alone, without regard to the extraneous facts, and circumstances, disclosed, under the 26th sec. Chap. 80, 2 R. S., 230, and the exposition given to that section by this court in Chapman, &c., vs. Stockwell, 18 B. M., p. 650, the inevitable conclusion would be, that the vendor had by the recitals in his deed lost his lien. But when he made the deed, and the same was recorded, he was prosecuting this action to enforce his lien. Cargile in his answer then on file claimed to have paid of the purchase money only $225 more than the amount for which he was credited—charged that appellee had no title to the land, that a part of it was held by another, adversely to him, and called upon him for an exhibition of his title. In a little over two months after this answer was filed, induced thereto by the allegations, that he had no title perhaps, appellee made and acknowledged the deed, and failed to exhibit his derivation of title. But whether the reason assigned for making the deed be the correct one or not, it would be inconsistent and irrational to conclude that he intended thereby to waive or release his lien on the land. His intention, however, could not intervene to deprive appellant of any legal rights fairly acquired under said deed.

More than one year after said deed was acknowledged Cargile filed an amended answer setting up other, and a totally different defense, from that presented in his original answer; but made no

mention of the deed of which it may be presumed he had notice, and did not waive the objections made by him in his former answer to the title. Nor is there any evidence that he accepted said deed, before he conveyed the land to appellant, who had been previously appointed commissioner to execute the judgment for the first installment, and who had actual notice of the pendency of this suit at the time the deed was made to him, as he told the witness Cox, and offered to sell the land to Cox, if he would take such title as he got from Cargile.

Moreover, his deed recites that it was made *"in consideration of $1,800, paid by him to Gooch,"* and in his petition to be made a defendant to the action, and which was taken as his answer, he states the consideration for the land was "$1,800 *as recited in the deed."* But in his amended answer, or rather, his answer to the amended petition of appellee, he says that Gooch and Cargile made a settlement, and Cargile fell in his debt $1,800.

> "That *Gooch* drew an order on Cargile for said sum, and Cargile agreed to, and did convey the tract of land to this defendant for said sum and this defendant executed his bond to Gooch for $1,350 to be paid when this defendant could effect a sale for said land."

The last sum stated as the consideration is $450 less than that stated in the petition before referred to, and than that recited in his deed, and no reason assigned for reducing the price, no money is claimed to have been paid, and why Gooch was willing to reduce his debt $450, when appellant was bound to pay the full amount, is not attempted to be explained in the answer; and the smaller sum is only to be paid when a sale of the land can be effected, and that, as may be assumed from the evidence of Cox, to a purchaser who is willing to take such title as he got from Cargile as the bond which he says he executed to Gooch is not produced, and nothing is known of its contents except what is said of it in the answer.

The price for the land as admitted in the last answer, and for which he says he gave his bond, if paid, is only about $200 over the one-third of the price that Cargile contracted to pay appellee for it, and the effort to prove that $1,800 approximated a fair price wholly fails; the evidence very decidedly preponderates that it was inadquate by other witnesses than Cox, and he proves that some short time before the date of the deed to appellant, Cargile sold the one-half of the tract for $20 per acre, making $3,090 for

one-half, and the sale was not consummated only because Cargile could not, or, rather, did not take the proper steps to make the purchaser a good title.

The transaction is not what it purports to be on the face of the deed, the evidence is far from satisfactory; indeed, there is no evidence, that Cargile owed Gooch anything, and it seems that Gooch and appellant are volunteers coming in, to aid Cargile to remove the land from the reach of appellee, and prevent him from collecting a just debt—and in that attitude the chancellor cannot favor appellant, but will have him to take under his deed what may be left after paying appellee his debt.

In this view of the case, it is not necessary to decide the effect of the alleged mistake in writing the deed. But it is proper to add that appllant is a *lis pendens* purchaser with actual notice of the existence of the suit and its objects, was appointed to carry out the judgment of the court, and by his own voluntary act attempting to defeat the very judgment he was ordered to execute. His attitude is such as to preclude him from presenting any obstacle in the way of appellee. Wherefore, the judgment is affirmed.

*A. K. Bradley, Cissell & Vance & Gordon, for appellant.*

*Lindseys, Yeaman, for appellee.*